**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATHANIEL WILLIAMS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PRECIOUS CLIFFS, LTD. and | : | |
| M/V BUSSARA NAREE, | : | |
| Defendants | : | NO.  04-cv-0746 |

**MEMORANDUM AND ORDER**

PRATTER, DISTRICT JUDGE                                                                      JULY 20, 2006

Plaintiff Nathaniel Williams has brought suit against the Defendants, the merchant vessel

M/V Bussara Naree and its owner, Precious Cliffs, Ltd., (collectively, "the vessel") pursuant to

the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), for injuries he

allegedly sustained when he fell from a platform into the cargo hold of the M/V Bussara Naree.

The Defendants have filed a motion for summary judgment, which Mr. Williams opposes.  The

Court heard counsel's ably presented arguments on the issues, and also received supplementary

briefing from the parties.  For the reasons set forth more fully below, the Court denies the

Defendants' motion.

I.      **FACTS AND PROCEDURAL HISTORY**

On the date of the accident, February 22, 2002, the ship was docked in the Port of

Philadelphia at a pier and terminal operated by Delaware River Stevedores ("DRS"), an

independent stevedoring contractor.  The vessel was carrying a load of urea, a white, sand-like

substance, which was to be discharged from the ship by DRS.  Mr. Williams was a longshoreman

employed by DRS who came to the ship to assist in unloading the cargo.

At approximately 8:00 a.m. on the date in question, DRS employee Leopold Dennis, a front-end loader operator, was the first longshoreman to enter Hatch #1 of the vessel to discharge the cargo.  Mr. Dennis took photographs of the cargo below, as well as a broken railing attached to a platform at the base of a ladder leading down into the hatch.  He then descended, without incident, into Hatch #1 using the ladder with the broken railing, and began his work without reporting the damaged railing to any employee of DRS or of the vessel itself.

Later that day, at approximately 12:50 p.m., Mr. Williams reported to work for DRS to assist in discharging the cargo from the vessel.[1]  At that time, Mr. Dennis had cleared the cargo to a level which entirely uncovered the platform with the broken railing.  Mr. Williams began descending the ladder into Hatch #1, which led to the platform that Mr. Dennis had previously observed as having a broken railing.  Mr. Dennis did not warn Mr. Williams that the railing on the platform was broken, and Mr. Williams claims that before descending he looked down at the platform and railing, which appeared to him to be secure with no visible structural issues.  Mr. Williams safely descended the ladder into the hatch until he arrived at the landing platform.  At that point, Mr. Williams evidently reached back to grab the railing, at which point the railing broke off and fell to the deck below, allegedly causing him to fall to the deck as well.  Mr. Williams alleges that he has suffered severe and permanent injuries as a result of his fall, leaving him totally disabled from any employment.

---

[1]  These laborers, generally called "trimmers," use shovels to remove the urea that the front-end loader was unable to pick up.

## II.  APPLICABLE STANDARDS

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party would bear the burden of proof on a particular issue at trial, the moving party's initial burden as to that issue can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met this initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

**B.      Longshore and Harbor Workers' Compensation Act**

Mr. Williams bears the burden of establishing that the vessel and its owner breached a duty of care pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b).  Section 905(b) provides for a cause of action for negligence against a shipowner, stating  that "[i]n the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . ."  33 U.S.C. § 905(b).  That statutory provision is part of the 1972 Amendments to the LHWCA, which "replac[ed] the old doctrine of seaworthiness, according to which a vessel was generally strictly liable for injuries longshore workers suffered while on board, with a negligence standard that courts were to develop by applying general land-based doctrines of tort law."  Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 536 (3d Cir. 1994).

The Supreme Court has outlined the three duties that a vessel owner owes to stevedores and longshoremen who board a vessel to perform cargo loading or unloading operations: (1) the turnover duty, (2) the active control duty, and (3) the duty to intervene.  Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 98 (1994); Scindia Steam Navigation v. De Los Lantos, 451 U.S. 156, 166-78 (1981).  The "'turnover duty,' relates to the condition of the ship upon the commencement of the stevedoring operations."  Howlett, 512 U.S. at 98.  Pursuant to the "turnover duty," the vessel must turn over the ship to the stevedore in such a condition that an expert stevedore acting with reasonable care can conduct cargo operations safely.  Kirsch, 971 F.2d at 1029.  The "active control duty" is applicable once stevedoring operations have begun, and provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the active control of the ship.  Howlett, 512 U.S. at 98.  The "duty to

4

intervene" concerns the vessel's obligations with regard to cargo operations in areas under the

principal control of the independent stevedore.  Id.  The ship's duty to intervene "requires the

ship to take affirmative steps to rectify hazardous conditions even though it did not create the

danger and even though the danger did not exist at the point of 'turnover,' at least when the ship

has actual knowledge and the condition is not obvious." Serbin v. Bora Corp., Ltd., 96 F.3d 66,

70 (3d Cir. 1996).

The parties assert, and the Court agrees, that the only duty implicated in this case is the

turnover duty.  Pursuant to its turnover duty, the vessel has a duty to turn the ship over to the

longshoremen in a safe condition for unloading.  Howlett, 512 U.S. at 98.  This turnover duty

requires that a vessel must:

> exercise ordinary care under the circumstances to turn over the ship
> and its equipment and appliances in such condition that an expert and
> experienced stevedoring contractor, mindful of the dangers he should
> reasonably expect to encounter, arising from the hazards of the ship's
> service or otherwise, will be able by the exercise of ordinary care to
> carry on cargo operations with reasonable safety to persons and
> property.

Id. (quoting Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 416-417

n.18 (1969); internal quotations omitted).  As part of its exercise of ordinary care in relation to

this turnover duty, the vessel must "inspect the ship for hazards before turning the ship over to

the stevedore, because inspection is integral to providing the stevedore with a reasonably safe

workplace . . . ." Kirsch, 971 F.2d at 1029.  To determine whether a vessel has satisfied its duty

to inspect the ship for hazards before turning the ship over to the stevedores, "the court must

determine whether there was a hazard or dangerous condition that the vessel owner had a duty to

address in inspecting the vessel." Prinski v. Blue Star Line Marine Ltd., 341 F. Supp. 2d 511,

5

517 (E.D. Pa. 2004).

As a corollary to the turnover duty, vessel owners also owe the stevedore the duty to warn, which requires the vessel to:

> warn the stevedore of any hazards on the ship or with respect to its equipment, so long as the hazards are known to the vessel or should be known to it in the exercise of reasonable care, and would likely be encountered by the stevedore in the course of his cargo operations, are not known by the stevedore, and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. _____

Howlett, 512 U.S. at 98-99 (quoting Scindia Steam, 451 U.S. at 167; internal quotations omitted).

Shipowners "will not ordinarily be liable to a longshore worker injured by an obvious hazard because the shipowner's duty is only to provide a workplace where skilled longshore workers can operate safely." Kirsch, 971 F.2d at 1029. Shipowners can ordinarily "reasonably rely on the stevedore (and its longshore employees) to notice obvious hazards and to take steps consistent with its expertise to avoid those hazards where practical to do so." Id. at 1030. The obviousness of the hazard is generally a question of fact for the jury to decide and is inappropriate for resolution by the court on summary judgment. Serbin v. Bora Corp., Ltd., 96 F.3d at 73; Kirsch, 971 F.2d at 1033.

Shipowners, although not ordinarily liable for injuries caused by open and obvious hazards, may be liable for such hazards because of the "practical measures duty" of the turnover duty. The "practical measures duty" requires the vessel to "mitigat[e] open and obvious hazards if the ship reasonably should know that longshoremen either (a) are likely to work through them rather than mitigate them, or (b) are unable to mitigate them through practical measures." Hill v.

6

Reederei F. Laeisz G.M.B.H., 435 F.3d 404, 412 (3d Cir. 2006).  Therefore, facts regarding the

actual practices of longshoremen become relevant to the determination of what the vessel

"reasonably should expect the longshoremen to do, and what measures are practical."  Id.  The

shipowner's knowledge of the hazard, or the frequency of the occurrence of the hazard, is

irrelevant to the practical measures duty.  Id. at 410.  Rather, the relevant question is, "'whether,

under all the circumstances, safer alternatives are impractical.'"  Id. (quoting Kirsch, 971 F.2d at

1030).

## III. DISCUSSION

To establish a claim for damages, Mr. Williams must show that (1) his injuries were

caused by a defect in the vessel or its equipment; (2) the vessel knew about the defect or should

have known about the defect in the exercise of reasonable care; (3) the hazard was likely to be

encountered by the stevedore in the course of its operations; and (4) the hazard was not known to

the stevedore and was one that would not be obvious to or anticipated by a reasonably competent

stevedore.  Howlett, 512 U.S. at 98-99.  Even if the hazard is an obvious one or one which

should have been anticipated by a reasonably competent stevedore, the ship will be liable if it

failed to mitigate the danger, knowing, or in the exercise of reasonable care should have known,

that longshoremen are either likely to work through the hazard or are unable to mitigate the

hazard through practical measures.  Hill, 435 F.3d at 412.

As an initial matter, the parties do not dispute that Mr. Williams' injuries were caused by

a defect in the ship, namely, the broken railing on the ladder platform leading to the cargo hold.

The parties also do not dispute that the broken railing was a hazard likely to be encountered by

the stevedore in the course of its operations.  The ship and its owner argue, however, that there is

no cause of action under the turnover duty because there is no evidence that the shipowner had any knowledge of the broken railing, and the hazard was an obvious one, which was easily avoidable.  In contrast, Mr. Williams argues that summary judgment is inappropriate because there are genuine issues of material fact as to the actual practices of longshoremen, as to whether the hazard was obvious to him, whether the ship should have known about the broken railing, and whether the hazard was practically avoidable.

### A.  The Vessel's Knowledge of the Hazard

The parties dispute whether the hazard was one that the ship knew about or, in the exercise of reasonable care, should have known about.  The vessel argues that it had no reason to know of the broken ladder because the cargo holds and ladders were inspected prior to the loading of the urea in South America, and, furthermore, once the cargo was loaded, the ladders and railings were covered with urea.  Mr. Williams contends that the ship should have known about the broken railing because the pictures Mr. Dennis took before he descended into the hold clearly show the broken railing, and the vessel's Captain Ramesh testified at his deposition that the ship's crew should have inspected the ladder and discovered the broken railing.

As noted above, in the first instance, shipowners have the duty to inspect the vessel before turnover to the stevedore as a matter of providing the stevedores with a reasonably safe workplace as required by Scindia.  Kirsch, 971 F.2d at 1029.  There is no dispute that the broken railing created a dangerous condition.  Rather, the dispute is whether the ship should have inspected and discovered the condition.  The vessel here argues that it would have been impossible to inspect for the broken railing, but Mr. Williams insists that, at least at a point prior to his accident, the railing was plainly visible inasmuch as Mr. Dennis took photographs of it.

Specifically, the vessel presents evidence, including testimony from Captain Ramesh, that at the time Mr. Dennis began discharging cargo from Hatch #1, the cargo was covering the broken railing thus making inspection and discovery impossible.  Mr. Williams counters with photographic and testimonial evidence from Mr. Dennis which tends to show that the hazardous broken railing was visible and able to be seen during an inspection prior to the commencement of the unloading operations.

The Court finds that, mindful of its obligation to construe all evidence in a light most favorable to Mr. Williams, a fact-finder could reasonably conclude that the vessel here failed to exercise of reasonable care to inspect the ship and discover the hazardous broken railing, and that because it failed to discover the hazard and take remedial measures, it turned the ship over to the stevedores in a dangerous condition.  Thus, there is a genuine issue of material fact, and summary judgment is inappropriate on that issue.

**B.  Knowledge of the Stevedore and Obviousness of the Hazard**

As explained above, vessels will not ordinarily be liable for injuries caused by known or open and obvious hazards.  This is so because the ship must be able to rely on experienced stevedores to undertake their work in a safe manner.  Kirsch, 971 F.2d at 1029.  Not illogically, the vessel here contends that the broken railing was an open and obvious hazardous by definition because Mr. Dennis took pictures of it before descending into the hold to begin removing the cargo.  Moreover, this vessel argues, Mr. Dennis' irrefutable knowledge of the railing must be imputed to the stevedore employer because Kirsch holds that shipowners can ordinarily rely on the expert stevedores and their employees to notice obvious hazards and take steps to avoid them.

Mr. Williams undermines the vessel's logic, however, by contending that the broken

9

railing was not an open and obvious hazard because he did not see it when he began descending

into the hold some four hours after Mr. Dennis had been removing the cargo.  Mr. Williams

argues that the area surrounding the platform changed in the five hours that Mr. Dennis had been

clearing the urea.  That is, at 8:00 a.m. the platform was covered with the white, granular,

powdery cargo and the broken railing was easily viewable, but at 1:00 p.m., when Mr. Williams

arrived, the white cargo has been cleared from the platform and from deck below, making the

contrast between the gray railing and gray hold below poor, or at least considerably less stark

than five hours earlier.

      The word "obvious," given its plain meaning, "connotes something effortlessly and

readily perceived."  <u>Davis v. Portline Transportes Maritime Intercanional</u>, 16 F.3d 532, (3d Cir.

1994).  For purposes of the turnover duty, the obviousness of a hazard also includes a "key

element [of] the appreciability of the danger."  <u>Kirsch</u>, 971 F.2d at 1033.  As noted above, the

question of the obviousness of a hazard under all the circumstances, including the key element of

the appreciability of the danger, is generally one of fact to be left to a jury.  <u>Id.</u>  In <u>Kirsch</u>, the

Third Circuit Court of Appeals concluded that there was no question of obviousness of the

hazard for the jury in that case because the plaintiff admitted that he saw the hazard, and fellow

longshoremen complained about the hazard, indicating appreciability of the danger.  <u>See, e.g.</u>,

<u>Kirsch</u>, 971 F.2d at 1033.  Here, Mr. Williams specifically denies that he saw that the railing was

broken when he began descending the ladder.  <u>See, e.g.</u>, <u>Davis</u>, 16 F.3d 532, 538-39 (reversing

district court ruling that hazard was obvious because plaintiff testified he did not see the grease

spot that he slipped on until he fell and district court must take the plaintiff's testimony as true

and resolve all inferences in his favor).

10

Having to resolve all inferences in favor of Mr. Williams, the Court finds that there is a genuine issue of material fact as to whether the hazard here was an obvious one.  It is undeniable that Mr. Williams testified that he did not see the broken railing that caused his fall until he fell.  Mr. Dennis observed that the ladder was broken and did not tell any of the DRS supervisory staff nor any of the ship's crew members, allegedly because there was then no one from either organization to tell.  Although Mr. Dennis may have easily observed the hazardous state of the ladder, the same need not necessarily be true for Mr. Williams.  Thus, for summary judgment purposes, the Court must conclude that the broken railing was not obvious to Mr. Williams and finds that the question of obviousness of the hazard must go to a jury.

### C.  Failure to Mitigate the Hazard

Even where a hazard is an obvious one, however, the vessel may be liable for failing to mitigate the obvious hazard which causes injuries to a longshoreman if the ship reasonably should know that longshoremen either (a) are likely to work through the obvious hazard, or (b) are unable to mitigate the obvious hazard through practical measures.  Hill v. Reederei F. Laeisz G.M.B.H., 435 F.3d 404, 412 (3d Cir. 2006).  As formulated by the Third Circuit Court of Appeals, this aspect of the turnover duty does not depend upon the shipowner's actual pre-incident knowledge about the longshoremen's actual practices, but rather the facts about actual practices are relevant to determining what the ship reasonably should expect longshoremen to do.

The vessel here argues that it should not be liable because Mr. Williams could have easily avoided the hazard by using a second ladder which led down into the hatch, namely, the same ladder Mr. Dennis used when he returned from lunch just before Mr. Williams arrived to work.  Mr. Williams contends, however, that it was impossible for him to avoid the hazardous railing

because the second ladder to the hatch was blocked by Mr. Dennis' front-end loader and the urea cargo in such a way that alternative ingress would be impossible.

Here, there undeniably is a factual dispute as to whether longshoremen are likely to enter into a hold and unload cargo despite a broken railing (i.e., whether longshoremen are likely to "work through" the "obvious" hazard) as well as whether the hazard of the broken railing could have been mitigated through practical measures. The parties have presented the Court with no evidence of the practices of longshoremen when faced with a ladder with a broken railing other than Mr. Dennis' apparent observation of the broken railing and his use of that same ladder to descend into the cargo hold. The factual questions of whether the ship reasonably should have known that longshoremen are likely to work through the hazard of a broken railing rather than mitigate the problem, and if feasible, how so, are certainly enough to preclude summary judgment at this stage.

A question of fact also exists as to whether the vessel reasonably should have known that the longshoremen would have been able to mitigate the hazard through practical measures. If Mr. Williams' only alternatives to entering the cargo hatch by way of the broken ladder were impractical, such as abandoning his job or incurring possible discipline for delaying the unloading operations, then the vessel had the duty to warn of or mitigate the hazard created by the broken railing, even if it was open and obvious. Moreover, there is indeed a factual dispute as to whether Mr. Williams practically could use the second ladder based on the level of the urea and the position of Mr. Dennis' front end loader, the equipment being an impediment caused solely by the stevedore. Taking all of the evidence about which the Court has been informed by this point in the light most favorable to Mr. Williams, reasonable fact finders could conclude

that, under all of the circumstances, safer alternatives were impractical and/or unavailable to him.

Thus, summary judgment is improper at this juncture.

**III.  CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment will be denied,

and the case will proceed to trial.  An appropriate Order consistent with this Memorandum

follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATHANIEL WILLIAMS,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **PRECIOUS CLIFFS, LTD. and** | : | |
| **M/V BUSSARA NAREE,** | : | |
| **Defendants** | : | **NO.  04-cv-0746** |

## ORDER

AND NOW, this 20th day of July, 2006, upon consideration of Defendants' Motion for Summary Judgment and the Exhibits thereto (Docket Nos. 44, 45, 46), Plaintiff Nathaniel Williams' Response (Docket No. 49), Defendants' Reply (Docket No. 52), the professionally proficient oral argument presented by counsel, and the parties' supplementary briefing on the issues, it is hereby ORDERED that Defendants' Motion is DENIED.

IT IS FURTHER ORDERED that this action shall proceed on the following schedule and in accordance with the practices and procedures referred to in the Court's July 1, 2005 Second Revised Scheduling Order (Docket No. 32):

1.	All trial exhibits shall be marked and exchanged on or before January 16, 2007.

2.	All parties are to prepare and file with the Clerk of Court their Pretrial Memoranda, in accordance with this Order and Local Rule of Civil Procedure 16.1(c) as follows:

a.	Plaintiff:  on or before January 23, 2007.

b.	Defendants:  on or before January 30, 2007.

One (1) copy of each Pretrial Memorandum shall be served on the Court (Chambers, Room

5118) when the original is filed.

3.      A final pretrial conference will be held with the Honorable Gene E.K. Pratter on February 6, 2007 at 10:00 a.m. in Chambers, Room 5118, United States Courthouse.  Lead trial counsel is required to appear at the conference.  If trial counsel is on trial in another matter, an attorney in his or her office who is thoroughly familiar with this case is required to appear at the conference.

4.      The case will be placed on the Court's trial pool list on February 13, 2007.  The case will be tried to a jury.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge